Buckley<br>v.<br>Corse.

---

ISAAC SKILLMAN v. JAMES VAN PELT et ux. and MONT-
GOMERY and HILLSBOROUGH.

The testator devised as follows:—"I give and devise to my sons, Abraham
and James, my farm whereon I now live; to them, their heirs and assigns
for ever—to be equally divided between them—Provided they or their heirs
shall pay or cause to be paid to my executors, herein after named, the sum
of thirty-five hundred dollars, within eighteen months after my decease;
which said sum of money is to be paid by them equally, each one half:" and
appointed Abraham (one of the devisees) and a stranger executors. After
the testator's death, 31st October, 1820, the executors proved the will, and
the devisees entered and took possession of the premises; and on the 25th
November, 1820, made partition thereof between them, by mutual releases.
Under this will, the devisees took an estate in fee simple in the devised pre-
mises, charged with the payment of seventeen hundred and fifty dollars
each.
The payment of this sum was not a condition, on the breach of which the
right vested in the executors to sell: they could assert their claim under the
will only by suit or bill.
The orphan's court could not decree a sale, founded on the supposed breach of
any such condition: that remedy exists in this court alone.
James, one of the devisees, being thus seized and possessed of his moiety of
the premises in severalty, on the 1st May, 1822, mortgaged it to the com-
plainant for seven hundred dollars. In April, 1822, the executors settled
their account in the orphan's court; by which, after paying debts and ex-
penses, there appeared to be a balance in their hands payable to the legatees.
In January, 1824, they exhibited to the orphan's court an account of other
debts discovered, amounting to thirty-seven hundred dollars, and introduced
into the account unpaid legacies amounting to two thousand and forty dol-
lars; which, with expenses, made a deficiency of five thousand seven hun-
dred and forty-eight dollars. This account was allowed by the court, and a
decree for the sale of the real estate devised, founded upon it. This ac-
count was irregular. The orphan's court cannot decree a sale of real estate
for the payment of legacies.
The order of the orphan's court, (made upwards of a year after the death of

the devisor,) could not overreach and destroy the antecedent title of the complainant, under his mortgage from the devisee.

At common law, the heir became personally liable to specialty debts of the ancestor, by reason of the lands descended, to the extent of their value. The statute, 3 *W. and M. c.* 14, placed the heir and devisee on the same footing: they are personally responsible after alienation of the estate, as if they still held it: but bona fide purchasers under them never were liable; the lands in their hands are discharged.

Our statute "for the relief of creditors against heirs and devisees," passed 7th March, 1797, extends the remedies to all debts of the ancestor, whether by specialty or otherwise; yet preserves the principle, that bona fide purchasers shall be protected.

The "further supplement to the act making lands liable to be sold for the payment of debts," passed 12th December, 1825, creates a lien on the real estate of the ancestor or devisor, for one year after the decease; and it may be sold by virtue of an order of the orphan's court, if obtained within that time; which presupposes, that before that act no such lien existed.

Isaac Skillman, the complainant, filed his bill in this court, setting forth, that James Van Pelt, being seized and possessed of the premises in the bill after mentioned, applied to him for the loan of seven hundred dollars, and offered to him as a security for the loan and the interest to arise on it, a mortgage on the said premises. That he advanced the money on the faith of the said mortgage, and that Van Pelt and wife executed to him the mortgage, bearing date the first day of May, eighteen hundred and twenty-two, and that it was duly registered on the eighth day of the same month, pursuant to the statute.

The bill proceeds to state that default has been made in the payment covenanted for in the proviso in the mortgage, and that there is a large arrear of interest due.

The bill further states, that the townships of Montgomery and Hillsborough have in some way acquired possession of the premises, and they are therefore made defendants together with James Van Pelt and wife.

And the bill seeks relief and foreclosure and sale, by the decree of this court.

James Van Pelt and wife do not answer, and as against them there is a decree, pro confesso. The defendants, Montgomery and Hillsborough, come in and answer, that they have no knowledge of the estate of James Van Pelt in the premises, and that they know nothing, except from hearsay, of the debt due

from Van Pelt to Skillman, or of the mortgage to Skillman mentioned in the bill. They admit that they are in possession. And they further answer and claim the premisses described in the mortgage, by virtue of a deed of bargain and sale from Abraham Skillman and Abraham Van Pelt, the executors, &c. of John Van Pelt, deceased, to them, bearing date the ninth day of March, eighteen hundred and twenty-five ; and they insist, that by virtue of this deed they hold the premises free and clear of the mortgage, and that they, Montgomery and Hillsborough, are the owners of the premises in fee simple.

Skillman<br>v.<br>Van Pelt<br>et ux.

To this answer there is a replication ; and the cause was argued before J. W. SCOTT, one of the masters of the court, by the direction of the chancellor, he having been of counsel with one of the parties.

*W. Thompson*, for the complainants ;

———— ————, for defendants.

Cases cited :—6 *Halst. R.* 1 ; 4 *Kent's C.* 130 ; 2 *Atk. R.* 619 ; 1 *Roper on Wills*, 505 ; 1 *Cruise D. tit. Condition* ; 2 *Dal. R.* 317 ; 5 *Halst. R.* 259 ; 2 *Con. R. Wheeler v. Walker ; 2 Blac. C.* 156 ; 2 *Vern. R.* 222, 366 ; 1 *Salk. R.* 156 ; 2 *Anst. R.* 506 to 514 ; 1 *Eq. Ca. Ab.* 149 ; *Rev. L.* 291, 436 ; *Harr. Com.* 130.

SCOTT, M. It appears in evidence, that John Van Pelt, in his life-time, was the undisputed owner of the premises ; and that in and by his will, executed and published in due form of law to pass real estate, *inter alia*, he devised as follows :—" I give and devise to my sons, Abraham Van Pelt and James Van Pelt, my farm whereon I now live, containing about two hundred and thirty-five acres of land, be the same more or less, with all the appertenances ; to them, their heirs and assigns for ever, to be equally divided among them as to quantity and quality, as near as may be : Provided they or their heirs shall pay, or cause to be paid, to my executors herein after named, the sum of thirty-five hundred dollars, good money of the state of New-

65

Jersey, within eighteen months after my decease; which said sum of money is to be paid by them equally, each one half." And he makes the same Abraham Van Pelt and one Abraham Skillman the executors of that will.

John Van Pelt died, and his will was proved the thirty-first day of October, eighteen hundred and twenty.

Abraham Van Pelt and James Van Pelt, the devisees, entered in and upon the premises immediately after his death, and were seized and possessed thereof; and on the twenty-fifth day of November, eighteen hundred and twenty, made partition of the premises, to each his moiety, by mutual releases. The portion thus allotted to James, on this partition and release, is the land mortgaged by him to the complainant and described in the bill.

James being thus seized and possessed in severalty of the premises, did mortgage them bona fide to the complainant.

It is here to be observed, that the object of the testator was to give precisely the same estate to his two sons, Abraham and James, one of whom he constituted an executor; and that intention, if consistent with the law, and it can be fairly collected from the will, is to be carried into effect.

The defendants, in their evidence and argument, but not in their answer, insist that the personal estate of the testator, John Van Pelt, was ascertained as insufficient to pay his debts, and that therefore an order was made by the judges of the orphan's court of the county of Somerset, that the executors should sell the real estate of the testator for that purpose: that the order was made in the term of April, in the year eighteen hundred and twenty-four; and that thus empowered, the executors did sell to them the premises, by deed bearing date the twenty-ninth day of March, eighteen hundred and twenty-five.

By the evidence it appears that the executors twice settled their accounts in the orphan's court of the county of Somerset: on each account there is a decree of allowance, and each account purports to be a final one. By the first of these, in April term, eighteen hundred and twenty-two, it appeared, that after paying all the debts of the testator, there remained a balance in the hands of the executors of twelve hundred and ninety-two dollars and forty cents, to be paid to the legatees named in the

Jan. 1832.

Skillman
v.
Van Pelt
et ux.

will, exclusive of a certain specific legacy given to one of the legatees, appraised and estimated at two hundred and two dollars and seventy-five cents. By the second account, exhibited in January term, eighteen hundred and twenty-four, it further appeared, that debts were subsequently discovered, and then reported to the orphan's court, exhibiting a deficiency of the personal estate as follows, viz: Debt due Abraham Stryker, Abraham Van Pelt principal and John Van Pelt surety, five hundred dollars. Debt due Cornelius Williamson, Abraham Van Pelt principal, John Van Pelt surety, three hundred dollars. Debt due to Joseph Skillman, from Abraham Van Pelt principal, John Van Pelt surety, two hundred and fifty dollars. Debt due to Jacob Voorhies, from Abraham Van Pelt principal, John Van Pelt surety, one hundred and fifty dollars. Debt due to widow Stryker, from Abraham Van Pelt principal and John Van Pelt surety, twenty-five hundred dollars. Thus making in the whole a round sum of three thousand seven hundred dollars of debts due from Abraham Van Pelt, one of the executors, to different persons, on all of which John Van Pelt was the surety. Thus it appeared that the newly discovered debts, and for which an order was prayed that the real estate should be sold, were primarily the debts of Abraham Van Pelt the executor, and that the testator, John Van Pelt, was the surety only, and that they amounted to the sum of three thousand seven hundred dollars. The same account exhibits and claims, that there was a further deficiency of the personal estate; and for the purpose of making this manifest, two legacies are introduced, one to Mary Ann Van Pelt for nine hundred dollars, and the other to Elizabeth Van Pelt for eleven hundred and forty dollars, amounting to two thousand and forty dollars; to which are added the expenses of the settlement; and thus making the whole an aggregate deficiency of five thousand seven hundred and forty-eight dollars and one cent. And this account is allowed by the court in all things. This deficiency is adjudged, and there is a decree for the sale of the real estate founded upon it.

The complainant showed by his evidence, that the aforesaid sum of seven hundred dollars, loaned by him to the defendant, James Van Pelt, and for which the mortgage was given, was

paid to the executors, and by them applied to the uses and bene-
fits of the estate; and he claims that he is entitled to have this
refunded to him from the equity thence arising. This matter
does not appear in the bill or answer.

The complainant has endeavored to impeach this order on the
ground of fraud; but I do not see in the course of the evidence
any fraud attaching to the two defendants who have answered,
nor am I able to observe that they have had any agency in ob-
taining the order.

It was abundantly proved that Abraham Van Pelt, the princi-
pal, before the application for the order, and at the time of the
order for the sale of the real estate, had very considerable estate,
and no reason has been assigned to me why his property has not
been applied to the payment of debts for which he was primarily
liable.

True the order is very hard, very irregular, and in great part
founded on the false assumption that the orphan's court, thus
applied to, may decree a sale of the real estate of the testator for
the payment of legacies: that the debts of the testator, and the
legacies, and the bequests in his will, may constitute one entire
mass, and for the payment of which the orphan's court may de-
cree a sale. It would be a heterogeneous mass indeed. Legatees
must look to other and better remedies. They are amply pro-
vided, and they are sure. But the order was obtained, and so
far forth as it really and bona fide was for the payment of the
debts of the testator, it must prevail.

It becomes, then, necessary to inquire, what estate was given
by the testator to his two sons in and by the will?

On this subject, I cannot doubt but that it was his clear inten-
tion to give them a fee, charged with the payment of the three
thousand five hundred dollars. Both took the same estate, and
to me it seems absurd to say, that the estate of Abraham was
subject to the condition, strictly so speaking, of his paying to
himself seventeen hundred and fifty dollars.

This is not a controversy between the devisee and the heir at
law, in which the latter relies upon the non-performance of a
condition precedent to defeat the estate of the devisee. I am
therefore of opinion, that Abraham Van Pelt and James Van

Pelt took under the will of their father an estate in fee, charged with the payment of seventeen hundred and fifty dollars each. That the payment of this sum was not a condition on the breach of which a right vested in the executors to sell. They could assert their claim and exert their right under the will only by suit or bill.

The order of the orphan's court could not overreach and destroy the antecedent title of the complainant, thus established in law and equity. It could sell, by the terms of the statute, only such estate as the heir or devisee had at the time of the making of the order; and nothing can be more certain than that the orphan's court could not decree a sale, founded on a supposed breach of such condition, if it be one. That remedy existed in this court alone.

Nor have the judges of the orphan's court attempted any such order. They have ordered and adjudged that the real estate shall be sold to pay the debts of the testator, and the conveyance by the executors under such order, by the statute, shall vest in the purchaser just such estate in the premises sold, as the heir or the devisee had at the time of the making such order by the orphan's court.

That a bona fide mortgagee, from the heir or the devisee, shall have the benefit of his security, exonerated from all demands by means of any mere debts of the ancestor or devisor, whether by specialty or otherwise, I believe can hardly be questioned.

At common law the heir became personally liable by reason of the lands descended, and to the extent of their value. He inherited subject, personally, to the debts of specialty.

Until the statute, 3 *W. and M. c.* 14, the devisee was in no shape bound, nor was the land liable even in his hands. That statute placed the heir and the devisee on exactly the same footing. They are personally responsible after alienation of the estate, as if they still held it; but purchasers under them, bona fide, never were liable. The statute of wills imposed no obligation on the devisee to pay any of the debts of the devisor, by reason of the devise, and the lands in their hands are and always were discharged.

Jan. 1832.

Skillman
v.
Van Pelt
et ux.

I take this as a certain and established principle, concurred in by the profession from time immemorial; a purchaser from the devisee has always been held perfectly secure from even specialty debts. Overturning that principle now, would introduce the utmost confusion.

Our statute, passed 7th March, 1797, giving relief to creditors against heirs and devisees, is founded on this assumption. It was drawn, manifestly, by the hand of a master of the subject, and although it extends the remedies to all debts of the ancestor or devisor, whether by specialty or otherwise, yet it preserves the vital principle that the purchaser, bona fide, shall be absolutely protected. Our recent statute, passed 12th December, 1825, the "further supplement to the act making lands liable to be sold for the payment of debts," I think, recognizes the same principle. It seems to me too plain to admit of argument or discussion, that a statute in aid of creditors, and which creates a lien on the real estate of the ancestor or devisor for one year, necessarily presupposes that no such lien antecedently existed; or, at the least, that it was not so extensive or operative.

On the whole, I am clearly of opinion that the complainant is entitled to a decree for the relief he seeks in his bill.

J. W. SCOTT.

New-Brunswick, Jan. 14, 1832.